**Maurice MILLINE, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 99–CF–1375.**

District of Columbia Court of Appeals.

Argued May 18, 2004.
Decided Aug. 26, 2004.

---

Lloyd Nolan, with whom James Klein and Jaclyn S. Frankfurt were on the brief, for appellant.

Alexandra F. Foster, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Thomas J. Tourish, Jr., and Rachel Carlson Lieber, Assistant United States Attorneys, were on the brief, for appellee.

Before RUIZ and GLICKMAN, Associate Judges, and PRYOR, Senior Judge.

GLICKMAN, Associate J.

An undercover police officer witnessed a drug transaction and radioed a "lookout" for the suspects involved. Within one minute, officers responding to the scene stopped appellant Maurice Milline and his companion. After the undercover officer confirmed Milline's identity as one of the subjects of his lookout, the police searched Milline and recovered heroin and cocaine. Milline was arrested and eventually tried and convicted of possession with intent to distribute heroin and possession of cocaine.

Milline claims in this appeal that the trial court should have granted his Fourth Amendment motion to suppress evidence (the drugs and the identification by the undercover officer) because the government failed to establish that the lookout broadcast was particularized and accurate enough to justify the police in stopping him. The broadcast was neither recorded nor transcribed, and at the hearing on Milline's motion, neither the undercover officer nor the arresting officer could recall any part of the lookout description that Milline allegedly matched. Milline argues that without knowing the details of this description, the trial court could not evaluate whether the lookout furnished the police with sufficient reason to stop him. This argument would have merit if the description in the lookout were the critical piece of information on which the stop's validity depended. But that is not in fact the case. Apart from the description of Milline, the lookout contained other information that independently supported his stop, namely, his location and a description of the person he was with. As this other information was provided at the hearing on Milline's motion, we conclude that the trial court properly ruled that there was no Fourth Amendment violation.

## I.

According to the government's evidence, at approximately 12:30 in the afternoon on October 12, 1996, undercover Metropolitan Police Officer Harry Sowers walked into a corner store at Twelfth and G Streets, Southeast, to purchase a bottle of juice. Inside the store, Officer Sowers observed a man sitting on a bench about two to three feet away from him "reach into his rear pants area." As Officer Sowers then

turned away to order his juice, he heard a voice coming from the man's direction saying, "How many do you want?" Officer Sowers then "looked back, looked down [at] the lap of Mr. Milline" and saw a "bunch of zip-locks in his lap, clear zip-locks with white substances," which Officer Sowers believed to be either powder cocaine or heroin.

To maintain his cover, Officer Sowers did not arrest Milline on the spot. Instead, he completed his purchase and returned to his car, which was parked in front of the store. Since "none of the arrest teams were in the area yet," Officer Sowers waited for them to arrive. While he was waiting, he saw Milline exit the store and walk with two other men down G Street.

Officer Sowers got out of his car and followed the three men on foot. When the men arrived at the corner of Eleventh and G Streets, Officer Sowers saw one of them, whom he later identified as Charles Hawkins, come from the back of a Nissan 300ZX and toss a small object toward Milline. Milline picked the object up and "stuffed [it] in the front inside pants area, the crotch area." Hawkins then handed something to the third man, after which Milline and Hawkins began walking back toward Twelfth and G Streets while the third man went down Eleventh Street. Officer Sowers followed Milline and Hawkins, returned to his car, and transmitted a lookout for all three men over an unrecorded surveillance channel.

With respect to Milline and Hawkins, the lookout was for two men walking into the 500 block of Twelfth Street (where Officer Sowers had seen them go after they arrived at Twelfth and G). Officer Sowers could not remember at the motions hearing how he described Milline in the

lookout, but he did recall that his description of Hawkins was for a black man wearing "shades" and a black baseball cap.

Within thirty seconds to a minute after they heard the lookout, Officer Stanley Farmer and a second officer stopped Milline and Hawkins in the 500 block of Twelfth Street. Officer Farmer testified that the two men were walking together and were the only persons in the area who matched the descriptions in the lookout, though he could no longer recall what those descriptions were. Officer Sowers observed the stop from a distance of about forty to fifty feet and promptly confirmed in a radio communication with Officer Farmer that Milline and Hawkins were the two individuals on Twelfth Street for whom he had broadcast the lookout.[1]

Officer Farmer then took Milline to an alley and asked him if he had any narcotics on him. When Milline denied it, Officer Farmer conducted a "field search" and recovered a packet of twenty-two zip-lock bags from between Milline's buttocks. One of the zip-locks contained cocaine; all the rest contained heroin.

## II.

On appeal from the denial of a motion to suppress evidence, "the facts and all reasonable inferences therefrom must be viewed in favor of sustaining the trial court ruling." *Peay v. United States,* 597 A.2d 1318, 1320 (D.C.1991) (en banc). Taking that perspective, "we review *de novo* the trial court's legal conclusions, ... and make our own independent determination of whether there was either probable cause to arrest or reasonable suspicion justifying a *Terry* stop." *Prince v. United States,* 825 A.2d 928, 931 (D.C.2003) (citations omitted).

---

1. The third man, last seen walking south on Eleventh Street, was not apprehended.

 The issue in this appeal is whether Officer Farmer had sufficient grounds to stop Milline. The Fourth Amendment permits a police officer to stop an individual for investigatory purposes so long as the officer possesses a reasonable suspicion supported by "specific and articulable facts" that the individual is involved in criminal activity. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). An officer may rely on a police lookout as the basis for such an investigatory stop provided that the lookout itself was based upon a reasonable articulable suspicion that its subject has committed an offense. *United States v. Hensley,* 469 U.S. 221, 232, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). The lookout in this case unquestionably satisfied that criterion—Officer Sowers's personal observations gave him ample probable cause to believe that Milline was dealing drugs. The only question, therefore, is whether the lookout provided Officer Farmer with sufficient information to justify his belief that Milline was one of the persons for whom the lookout was issued.[2]

Milline contends that the trial court could not make that determination without knowing the description in the lookout that he supposedly matched. This is so, he argues, because the court could assess neither the sufficiency of the description to justify a stop of *anyone*—i.e., whether the description was particularized enough to serve as a basis for reasonable suspicion— nor the accuracy of the officers' assessment that it justified a stop of *him*—i.e., that he matched the description.

 Milline makes a valid legal point. He correctly argues that in assessing the constitutionality of an investigatory stop, a court's determination of the existence of reasonable suspicion "cannot be a mere ratification of the conclusions of others." *Illinois v. Gates,* 462 U.S. 213, 239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A judge has the responsibility to make an independent assessment of the sufficiency of the basis for the stop, and to do so the judge must be "apprised of sufficient facts to enable him [or her] to evaluate the nature and reliability of that information." *In re T.L.L.,* 729 A.2d 334, 341 (D.C.1999). "A court may not simply rely on a police officer's conclusory assertions in deciding whether a search or seizure was justified under the Fourth Amendment, but rather must evaluate the facts underlying those assertions." *Sanders v. United States,* 751 A.2d 952, 955 (D.C.2000). Thus, without more, conclusory testimony by police officers that a defendant matched an unknown description of the suspect is not a sufficient basis for a judge to determine that a stop was justified.[3]

We could not, therefore, conclude that Milline's stop was justified if we had nothing but the officers' testimony that Milline matched a now-forgotten description in Officer Sowers's lookout. But that is not all we have. The lookout was for two suspects who were together at a particular place and time, and it included descriptions of both of them. Although we do not know

---

2. Much as in *Bryant v. United States,* 599 A.2d 1107, 1112 n. 9 (D.C.1991), "we do not understand the government to argue, nor could it reasonably, that the visual picture [Officer Sowers] had formed of [Milline] could be imputed to the other officers" under *Hensley.*

3. *See, e.g., Rance v. State,* 815 S.W.2d 633, 635–36 (Tex.Crim.App.1991) ("An officer's stated conclusion that a person matched a broadcast description, when the officer is unable to recall that description and other unchallenged evidence is presented showing appellant's appearance at the time was not similar to that of the actual offender, is insufficient to allow a reviewing court to determine that the officer's conclusion was reasonable.").

how Officer Sowers described Milline, we do know how he described Milline's companion Hawkins. We know that the lookout described Milline not only by his personal appearance, but also, in effect, as "the individual who is walking with a black man in shades and a black baseball cap in the 500 block of Twelfth Street right this moment." We also know that Officer Farmer, arriving at that very location less than a minute after the lookout was broadcast, observed two (and only two) men there who matched the descriptions in the lookout. Given (1) the exactitude with which the lookout specified the subjects' location, (2) the proximity in time between the lookout and the stop, (3) the particularity and unquestioned accuracy of the description of Hawkins, (4) Milline's association on the scene with Hawkins, (5) Officer Farmer's perception, which is uncontradicted, that Milline's appearance fit the lookout description of the second suspect (whatever it was), and (6) the absence of other people in the immediate vicinity who also matched the lookout, we have no difficulty concluding as a matter of law that Officer Farmer was justified in effecting an investigatory stop of Milline as well as of Hawkins. *See, e.g., United States v. Turner,* 699 A.2d 1125, 1129 (D.C.1997) ("we have routinely held that an imperfect description, coupled with close spatial and temporal proximity between the reported crime and seizure, justifies a *Terry* stop"); *Bryant,* 599 A.2d at 1112 (noting that where a description contained in a lookout was, by itself, "too general to justify seizing anyone under *Terry,*" the discovery of appellant "in the immediate area of the drug sale [and shortly after it occurred]

was essential to the justification for detaining him"). *See also Hill v. United States,* 627 A.2d 975, 979 (D.C.1993) (finding probable cause to arrest where lookouts not only contained "a particularized description of Hill's clothing" but also "pinpointed Hill's exact location for the arrest team").

Once Officer Sowers confirmed to Officer Farmer that Milline was one of the persons he had seen engaged in illegal drug activity and for whom he had issued the lookout, probable cause existed for Officer Farmer to arrest Milline and search him incident to that arrest. *See United States v. Hawkins,* 193 U.S.App. D.C. 366, 367–68 n. 2, 595 F.2d 751, 752–53 n. 2 (1978) ("Probable cause may emanate from the collective knowledge of the police, though the officer who performs the act of arresting or searching may be far less informed."). It makes no difference that the search preceded the formal arrest. *See Hill,* 627 A.2d at 978–79. The field search was therefore lawful, and the evidence resulting from the search was properly admitted at Milline's trial.

### III.

For the foregoing reasons, we hold that the trial court properly denied Milline's motion to suppress evidence. His convictions are affirmed.

*So ordered.*