**UNITED STATES, Appellant,**

v.

**Spencer BOXLEY, Appellee.**

No. 09–CO–746.

District of Columbia Court of Appeals.

Argued Dec. 15, 2009.

Decided Dec. 31, 2009.

Anne Y. Park, Assistant United States Attorney, with whom Channing D. Phillips, Acting United States Attorney, and Roy W. McLeese, III, Mary B. McCord, and Mona N. Sahaf, Assistant United States Attorneys, were on the brief, for appellant.

Donna L. Biderman, for appellee.

Before REID and BLACKBURNE–RIGSBY, Associate Judges, and STEADMAN, Senior Judge.

REID, Associate Judge:

The United States appeals from the motions court's order granting Spencer Boxley's motion to suppress evidence. We are constrained to reverse the motions judge's order and remand this case with instructions to deny Mr. Boxley's motion to suppress evidence.

### FACTUAL SUMMARY

In November 2008, the Grand Jury charged Mr. Boxley with unlawful possession with intent to distribute a controlled substance (cocaine). Mr. Boxley filed a motion to suppress tangible evidence on April 2, 2009. Three days later, the government lodged its opposition to the motion. The motions court held a hearing on the motion to suppress on June 16, 2009, and the following day orally issued a decision and order granting Mr. Boxley's motion on the ground that the police did not have probable cause to seize drugs from Mr. Boxley based on an informant's tip. Towards the end of June, the government notified the motions court of its intention to appeal the court's order suppressing evidence in this case, in accordance with D.C.Code § 23–104(a)(1) (2001), and on the same day filed a notice of appeal.[1] We granted the government's motion to expedite the appeal.

---

1. D.C.Code § 23–104 authorizes the government to appeal an order suppressing evidence if the United States "certifies to the judge who granted such motion that the appeal is not taken for purpose of delay and the evidence is a substantial proof of the charge pending against the defendant."

## ANALYSIS

We first summarize the evidence presented at the June 16, 2009 hearing, and the motions court's findings and conclusions articulated on June 17. The government presented the testimony of two Metropolitan Police Department Officers, Jason Ross and Jeffery Clay. Officer Ross testified that on November 13, 2008, around 5:30 p.m., he received a phone call from his "special employee," a paid informant. The informant stated that "somebody was selling drugs in the 1400 Block of Fairmont" Street, in the Northwest quadrant of the District of Columbia, and "that the drugs would be located ... somewhere in his coat—inside of his coat." The informant described the alleged seller as "a black male wearing a red coat, blue stripe and also [he] had a red and white scarf on him." The informant "informed [Officer Ross] that the person was selling crack cocaine." Officer Ross called Officer Clay and "related the lookout to him [and that he, Officer Ross, had] just received information from [his] source ... about the gentleman that was selling drugs in the 1400 Block of Fairmont." In response to the government's questions, Officer Ross declared that due to information from the informant, the police had obtained "eleven drug related arrests," and that he had not received any "unreliable" information from the informant. Furthermore, Officer Ross maintained that the informant had no pending cases at the time he relayed the information to the officer. On cross-examination, Officer Ross confirmed that the informant had no pending cases, but he indicated that the informant was on probation for possession of crack cocaine. In response to defense counsel's question, "Did [the informant] tell you how it is that he knew the person was selling drugs," Officer Ross said: "It stated ... to me that ... there was an individual in the block selling drugs and the drugs would be in the coat of the thing. I didn't ask how it knew, it just said—It saw the drugs."

Officer Clay testified that Officer Ross told him that "the source ... explained to him that it was a black male at 14th and Fairmont wearing a distinct red and white scarf and red and blue jacket and that he was ... selling drugs from either outside of his sleeve or somewhere in his coat." When Officer Clay reached 14th and Fairmont, he "didn't see anybody in the area," but "just south of 14th and Fairmont ... at a gas station that sits between Fairmont and Euclid Street, ... [he] immediately observed a person fitting the description." He identified Mr. Boxley as that person and indicated that he "had on a red and blue coat and ... had the ... red and white scarf wrapped around his neck in the torso area." He did not see anyone else who matched that description. Officer Clay approached Mr. Boxley, told him about the informant's information and that, based on that information the police "were going to check [Mr. Boxley's] jacket." Although Officer Clay could not "feel any bulges in the jacket," his partner removed a "clear zip with the smaller black zips that had [a] white rock substance inside and he got it from the inner right coat pocket."

In reaching its decision to suppress the evidence, the motions court reviewed the testimony that it recalled and stated: "There's ... nothing specific with regard to the informant, how they made the observations and specifically what they observed that is other than the conclusory statement that the individual was selling cocaine." The motions judge overlooked the testimony of Officer Ross that the informant "saw the drugs" and that they would be located "somewhere inside of [its] coat."

The motions court reviewed the law governing its decision as to whether there was probable cause for the seizure of the drugs based on an informant's tip, and recognized that the standard is the "totality of the circumstances," determined by reference to "veracity," "reliability," and "basis of knowledge." The court found that "Officer Ross and Officer Clay [ ] were entirely credible, very straight forward," and asserted that "[t]here's nothing about any of the questioning of them that would make me hesitate to believe what they said ... and I find them completely credible." Moreover, the court declared that "the reliability factor has been met here" because the "special employee ... provided useful information on at least 11 occasions [and] has never provided wrongful information."

The court believed that "basis of knowledge ... is the key question even though it's not in and of itself a deciding factor." The court's concern was, "it [did] not appear ... that the special employee was actually involved in the purchase of drugs and perhaps did not have any close up observation of whatever he or she was observing." Furthermore, the judge said, "the special employee did not mention [Mr. Boxley's] birth defect[2] and ... that just tells me that the observations were not made close up because if you were close up with Mr. [Boxley] you would have noticed that." The court acknowledged that the police "corroborate[d] the identification details that were provided" but commented that "there's no corroboration by the officers of any illegal activity and there's no specific description of that by the informant other than a conclusory determination ... that the individual was selling drugs." The court contrasted the observation of a "private citizen" with that of a "police officer" and declared: "If we ... had a police officer observing behavior that

[he or she] thought constituted drug sales or drug distributions our case law is fairly clear that it has to be an observation[ ] of a two way exchange.... So I think in comparison to situations where we know what probable cause is I don't think this meets that." Ultimately, the motions court explained,

we have no information here that there was an observation of essentially what amounts to a two way exchange. We just have a conclusion from a reliable individual that—that the person they described was selling drugs but we don't know the specifics of that. Again I think if a police officer were providing that same information that would not be sufficient for probable cause, and for that reason I would grant the defense motion to suppress in this case.

■ We turn to our standard of review and the applicable principles of law. We defer "to the motions court's findings of fact as to the circumstances surrounding the appellant's encounter with the police and [must] uphold them unless they are clearly erroneous." *Green v. United States*, 974 A.2d 248, 255 (D.C.2009) (internal quotation marks and citation omitted). Thus, "factual findings will not be disturbed if supported by substantial evidence." *United States v. Watson*, 697 A.2d 36, 38 (D.C.1997) (internal quotation marks and citation omitted). "The [motions] court's legal conclusions on Fourth Amendment issues, however, are subject to *de novo* review." *Joseph v. United States*, 926 A.2d 1156, 1160 (D.C.2007) (citations omitted).

■ Under the Fourth Amendment to the Constitution, a person is protected from "unreasonable searches and seizures," and the reasonableness of an "infringement on personal liberty" is deter-

---

**2.** Mr. Boxley has a keloid on his right ear.

mined by whether the information on which the police acted provided "reasonable articulable suspicion or probable cause." *Green, supra,* 974 A.2d at 256 (internal quotation marks and citation omitted). "Probable cause," around which this case revolves, "is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Moreover, "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* at 243 n. 13, 103 S.Ct. 2317. In a probable cause case involving an informant's tip, "an informant's 'veracity,' 'reliability,' and 'basis of knowledge' should [not] be understood as entirely separate and independent requirements to be rigidly exacted in every case." *Id.* at 230, 103 S.Ct. 2317. Rather, the court must focus on "the totality of the circumstances approach" and "probabilities" rather than "hard certainties." *Id.* at 231, 103 S.Ct. 2317.

Where the motions court, as in this case, focuses on "the basis of knowledge" in determining whether the police had probable cause, that "element would be satisfied for probable cause if the informant had explicitly stated that he or she 'saw' the appellant selling drugs." *Turner v. United States,* 588 A.2d 280, 281 (D.C.1991) (citing *Jefferson v. United States,* 476 A.2d 685, 687 (D.C.1984)). However, "the basis of knowledge of an informant need not be established by the direct assertions of [an] informant; it may also be fairly inferred." *Id.* (citing *Groves v. United States,* 504 A.2d 602, 605 (D.C.1986)). Furthermore, "an informant's history of supplying prior productive information is a most important guide to establishing reliability and credibility...." *Goldston v. United States,* 562 A.2d 96, 99 (D.C.1989).

In light of the applicable legal principles, we conclude that the motions court correctly assessed the testimony in determining that, under the "totality of the circumstances approach," the informant's tip in this case was reliable because of his past track record of accuracy and dependability relating to tips resulting in eleven arrests pertaining to drugs, and because Officer Ross testified that the informant had never relayed "unreliable" information to him. Of course, we defer to the court's assessment of the credibility of Officers Ross and Clay, and are bound by its finding that these officers "were entirely credible, very straight forward," and "completely credible."

But our review of the record leads us to believe that the motions court went astray in applying the "basis of knowledge" element. Primarily, we believe this because the court: (1) not only inadvertently overlooked key statements of the informant, reported through Officer Ross; but (2) also began to wonder whether the informant had a close enough view of Mr. Boxley to observe him; (3) expressed concern that "it [did] not appear ... that the [informant] was actually involved in the purchase of drugs"; (4) apparently considered it significant that Officer Ross did not indicate that the informant witnessed a two-way exchange; (5) concluded that there was "no corroboration by the officers of any illegal activity"; and (6) found the informant's statement that Mr. Boxley "was selling drugs" to be "conclusory." It appears that the motions court was looking for "hard certainties" rather than "probabilities." *See Gates, supra,* 462 U.S. at 231, 103 S.Ct. 2317. It is also important to stress that Officer Ross explicitly testified that the informant "saw the drugs," said "the person was selling crack cocaine," and indicated that "the drugs would be in the coat of [that person]."

We hold that under the "totality of the circumstances approach," the basis of knowledge element was more than satisfied in this case. As the motions court acknowledged, the officers corroborated the identification details the informant provided (the red and blue coat and the red and white knit scarf). Furthermore, the explicit statements attributable to the informant were significant, including "it saw the drugs," and the individual "was selling crack cocaine." Under *Turner,* the "basis of knowledge element would be satisfied for probable cause if the informant had explicitly stated that he or she 'saw' the appellant selling drugs." 588 A.2d. at 281 (citing *Jefferson, supra,* 476 A.2d at 687). Moreover, the basis of knowledge may be established through inferences. *Id.* Here, from the informant's statement that "it saw the drugs," it is reasonable to infer that the informant saw the drugs in Mr. Boxley's hands during a drug sale.

In short, under the "totality of the circumstances approach," the testimony of Officers Ross and Clay revealed that they had probable cause to search Mr. Boxley and to seize the drugs. Not only were the elements of veracity, reliability and basis of knowledge satisfied in this case, but also as the Court in *Gates, supra,* emphasized, "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." 462 U.S. at 243 n. 13, 103 S.Ct. 2317; *see also Safford Unified School District # 1 v. Redding,* —— U.S. ——, ——, 129 S.Ct. 2633, 2639, 174 L.Ed.2d 354 (2009) (summarizing legal principles applicable to the basis of knowledge element of probable cause).

Accordingly, for the foregoing reasons, we are constrained to reverse the motions court's order and remand this case with instructions to deny Mr. Boxley's motion to suppress evidence.

*So ordered.*