Eugene J. PORTER, Appellant

v.

UNITED STATES, Appellee.

No. 09–CM–1275.

District of Columbia Court of Appeals.

Submitted June 29, 2010.

Decided Nov. 12, 2010.

Lisa D. Chanel, appointed by the court, was on the brief for appellant.

Ronald C. Machen, Jr., United States Attorney, and Roy W. McLeese, III, John F. Mannarino, and Peter S. Smith, Assistant United States Attorneys, were on the brief for appellee.

Before BLACKBURNE–RIGSBY, Associate Judge, and TERRY and FARRELL, Senior Judges.

TERRY, Senior Judge:

Appellant Porter was convicted of possession of cocaine. On appeal from his conviction, he contends that his motion to suppress evidence should have been granted because a tip given by a known police informant was not sufficiently reliable to give the police probable cause to search him. In addition, he argues that the trial court erred in its handling of background information relating to the informant, asserting that his rights under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and the Sixth Amendment were violated. We reject all of these contentions and affirm the conviction.

## I

At the hearing on appellant's motion to suppress, the evidence showed the following: On July 10, 2009, Metropolitan Police Officer Michael Newton was working with a paid police informant to identify persons "involved in narcotics activity." Over a period of ten years, the informant had never given Officer Newton false information; his tips had resulted in approximately 100 arrests, for each of which he was usually paid $100. To the officer's knowledge, the informant did not use drugs, but he had one conviction for a non-drug-related offense.

At about 6:00 p.m. on July 10, Officer Newton drove the informant to the 2000 block of Benning Road, Northeast, an "open-air drug market" with which the informant was familiar. A few minutes later, the informant called Officer Newton on his cell phone and told him that in the 2000 block of Benning Road a man wearing blue jeans and a black T-shirt with a picture of Bob Marley on the front, walking with crutches, "was in possession of heroin." Within two minutes after Officer Newton received this call, he and other officers went to the designated location, and there they saw appellant, who matched the description perfectly. Another officer conducted a search of appellant's pockets and recovered a green ziplock bag containing a quantity of white powder, which turned out to be cocaine.[1]

Appellant presented no evidence, but his counsel argued that the motion should be granted because the police lacked probable cause to search and arrest appellant. The government relied on its previously filed written opposition to the motion. The court then denied the motion to suppress, ruling that the informant's tip was suffi-

1. Heroin was also found in appellant's possession, but its weight and purity could not be determined because the quantity was too small.

ciently reliable to provide probable cause for the search. After a non-jury trial, the court found appellant guilty of possession of cocaine, as charged, but granted appellant's motion for judgment of acquittal on the additional charge of possession of heroin. See note 1, *supra.*

## II

██ In reviewing the trial court's ruling on a motion to suppress, this court "must view the evidence in the light most favorable to the prevailing party." *Barrie v. United States,* 887 A.2d 29, 31 (D.C.2005) (citations omitted). "We defer 'to the motions court's findings of fact as to the circumstances surrounding the appellant's encounter with the police and [must] uphold them unless they are clearly erroneous.'" *United States v. Boxley,* 985 A.2d 1108, 1111 (D.C.2009) (citation omitted). "The court's legal conclusions on Fourth Amendment issues, however, are 'subject to de novo review.'" *Joseph v. United States,* 926 A.2d 1156, 1160 (D.C.2007) (citation omitted).

██ When probable cause is based on information gained from an informant's tip, we employ the "totality of the circumstances" test set forth in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Under that test, we assess a variety of factors, including "the informant's 'veracity' or 'reliability' and his 'basis of knowledge.'" *Id.* at 233, 103 S.Ct. 2317; *see Boxley,* 985 A.2d at 1112. "[A] deficiency in one [factor] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Gates,* 462 U.S. at 233, 103 S.Ct. 2317 (citations omitted).

In this case the totality of the circumstances showed that the informant's tip was reliable. In the first place, he was a known police informant who had supplied accurate information many times in the past. *See Goldston v. United States,* 562 A.2d 96, 99 (D.C.1989) ("an informant's history of supplying prior productive information is a most important guide to establishing reliability and credibility"); *accord, e.g., Barrie,* 887 A.2d at 32 ("the fact that the informant was well-known to the police, and thus could be held to account were his information found to be willfully false, gives his report added weight"). Officer Newton testified to the informant's history of providing accurate information. "Perhaps the most telling indicia of reliability can be a tipster's track record, *i.e.,* the number, frequency, content, accuracy (in both innocent and non-innocent detail), and productivity of any past tips." *Sanders v. United States,* 751 A.2d 952, 955 (D.C. 2000) (citation omitted).

The tip's innocent details, which the officers were immediately able to corroborate, also bolstered the informant's reliability. *See Boxley,* 985 A.2d at 1110, 1113 (innocent details included suspect's location and distinctive clothing); *Jefferson v. United States,* 476 A.2d 685, 687 (D.C.1984). Here, the tip described the suspect as a man walking with crutches, and wearing blue jeans and a black T-shirt with a picture of Bob Marley on the front. Within two minutes from receiving the tip, the officers saw a man precisely matching that description at the stated location on Benning Road; that man was appellant. *See Hill v. United States,* 627 A.2d 975, 979 (D.C.1993) (holding that arrest team had probable cause for arrest after receiving two radio broadcasts from undercover officer, when the first broadcast "contained a particularized description of Hill's clothing, and the second gave a specific location on 57th Street where Hill was standing").

██ The fact that the informant did not state the basis of his knowledge did not

render his information unreliable. First, the court could permissibly conclude that any deficiency in this respect was overcome by the informant's consistently reliable track record and the corroboration of innocent details. Second, "the basis of knowledge of an informant need not be established by the direct assertions of [the] informant; it may also be fairly inferred...." *Turner v. United States,* 588 A.2d 280, 281 (D.C.1991) (citation omitted). This court has upheld an inference that "if an informant's report contains detailed, current information, it is probably based on first-hand perception...." *Id.* (citation omitted). In this case the information about appellant's appearance and actions provided sufficient details to support a reasonable inference of first-hand perception.

Appellant's remaining contentions regarding the reliability of the informant are without merit. The assertion that there was no evidence to indicate whether his past tips related to drug offenses is contrary to the trial court's finding of fact that "this informant basically provided information relating to drug activity." This finding is amply supported by the record. Appellant's attempt to distinguish his case from *Barrie, supra,* is unavailing. We held in that case only that the informant's current employment, his ability to remain free from drugs and alcohol, and his success in staying out of the criminal justice system provided an "unusually strong record for a finding of probable cause." 887 A.2d at 33. However, as the government points out in a footnote in its brief, this does not mean that a finding of probable cause "require[s] that same level of record support."

Thus we conclude that the "totality of the circumstances" showed that the tip was sufficiently reliable to support the trial court's finding of probable cause. *See Boxley,* 985 A.2d at 1113; *Turner,* 588

A.2d at 282. We hold accordingly that the court did not err in denying the motion to suppress.

### III

■ During the suppression hearing, the defense learned of the existence of a PD–127 "confidential funds" form that was filled out for the informant in this case, which recorded his payment from the police department for providing the successful tip. The defense requested the document, arguing that the government was obliged to produce it under the Jencks Act, 18 U.S.C. § 3500, but the court declined to postpone the hearing for the purpose of locating it. Later, after the government obtained a copy of the PD–127 and turned it over to the court for an *in camera* review, the court found that it was signed by one of the arresting officers, Officer John Croson, and that "the document is completely consistent with the officer's testimony [at the suppression hearing]." There is no basis in the record for challenging this finding.

Appellant argues nevertheless that the PD–127 form, along with the informant's general "payment history," his "drug and alcohol history," and any prior impeachable convictions should have been turned over to him, and that the government's failure to do so constituted a *Brady* violation. We disagree. Under the applicable case law, none of this information relating to a confidential informant who did not testify was "material" under *Brady.*

■■ It has long been established that "the suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material either to guilt or to punishment." *Brady,* 373 U.S. at 87, 83 S.Ct. 1194. To establish "materiality" under *Brady,* a defendant must show that "there is a reasonable probability that, had the evidence been

disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *see Williams v. United States,* 881 A.2d 557, 562 (D.C.2005). *Brady* material can include both exculpatory and impeachment evidence. *Williams,* 881 A.2d at 562. In this case, however, the informant's payment history, including the PD–127, was not material to the defense because it was neither exculpatory nor impeachment evidence. It could not have been used to impeach the informant because he did not testify. It was not exculpatory because the court determined that the report was consistent with Officer Croson's testimony, which was anything but exculpatory.[2] Further, the report could not have been used to call into question the existence of probable cause because it did not even exist at the time the officers made their decision to arrest and search appellant. *See Joseph,* 926 A.2d at 1166 (defendant not entitled to record of informant's prior 911 call to "impeach the caller's credibility or to show bias" because determination of whether reasonable suspicion existed for a *Terry* stop[3] took into account only the information known to the officer at the time of the stop).

This analysis also applies to the other information which appellant claims he was entitled to receive under *Brady.* Because the informant did not testify, he could not have been impeached with any prior convictions or evidence of "drug ·and alcohol history." Thus appellant was not entitled to such information under *Brady* or under such cases as *Lewis v. United States,* 393 A.2d 109 (D.C.1978), *aff'd on reh'g,* 408

A.2d 303 (D.C.1979) (requiring disclosure of known impeachable convictions of government witnesses). None of this information would have affected the probable cause determination because Officer Newton testified that he was not aware, at the time of the arrest, of any convictions (other than the one he mentioned) or drug abuse on the part of the informant. *See Joseph, supra.* Accordingly, no *Brady* violation occurred with respect to the nondisclosure of any such information.

 Appellant also argues that his right to confront witnesses and his right to present a defense were violated by the trial court's denial of his requests for information relating to the informant. Again, we disagree. A defendant's rights under the Confrontation Clause include the opportunity to cross-examine the witnesses who testify against him. *Davis v. Alaska,* 415 U.S. 308, 315–316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Obiazor v. United States,* 964 A.2d 147, 150 (D.C.2009). That right, however, is not implicated when a person who provides information to the police does not actually testify in court against the defendant. Although the informant gave arguably "testimonial" information to the officers,[4] who then used that information to determine that there was probable cause to search appellant, the Supreme Court has held that a defendant's Sixth Amendment right to confrontation is not implicated by an officer's testimony at a probable cause hearing about what an informant told him. *McCray v. Illinois,* 386 U.S. 300, 312–313, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); *see also United States v. Raddatz,* 447 U.S. 667, 679, 100 S.Ct.

---

**2.** Croson was the officer who actually recovered the bag of cocaine from appellant's pocket.

**3.** *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**4.** *See Crawford v. Washington,* 541 U.S. 36; 53–54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); *Davis v. Washington,* 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

2406, 65 L.Ed.2d 424 (1980) ("[a]t a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial"). Appellant cites no authority, and we know of none, to support his suggestion that *Crawford, supra* note 4, has changed—either explicitly or by implication—the rule governing the use of hearsay at suppression hearings.

 Finally, this court has recognized that a defendant's right to present a defense is "not unqualified." *Teal v. United States,* 974 A.2d 262, 268 (D.C.2009). In order to prove a violation of that right, a defendant must "make some plausible showing of how [the undisclosed evidence] would have been both material and favorable to his defense." *Id.* Since, as we have discussed, appellant cannot show that any of the information he sought relating to the informant was "material" for *Brady* purposes, it follows *a fortiori* that he cannot make the requisite showing of materiality to support his claim of a violation of his right to present a defense.

## IV

For all of these reasons, appellant's conviction is

*Affirmed.*