**Jovaughn A. PARSONS, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 09–CM–523.

District of Columbia Court of Appeals.

Submitted Nov. 17, 2010.
Decided March 17, 2011.

Edward E. Schwab, was on the brief for appellant.

Ronald C. Machen, Jr., United States Attorney, and Roy W. McLeese III, Chrisellen R. Kolb, and Michael Ambrosino, Assistant United States Attorneys, were on the brief for appellee.

Before RUIZ, KRAMER, and OBERLY, Associate Judges.

OBERLY, Associate Judge:

Jovaughn Parsons appeals his conviction of one count of possession of a controlled substance (cocaine), in violation of D.C.Code § 48–904.01(d) (2001). Parsons argues that the trial court erred when it denied his motion to suppress evidence obtained during a search based on an informant's tip. We agree and hold that Parsons's conviction must be reversed and the case remanded for a new trial.

## I. Facts and Procedural Background

On May 13, 2008, United States Park Police Detective Wayne Humberson received an informant's tip about a "narcotics violation" in the 300 block of Livingston Terrace, Southeast. Pursuant to the tip, he detained and searched Parsons, who matched the informant's description. Detective Humberson's search produced a pink zip-lock bag containing cocaine, which was tucked into Parsons's left sock. Parsons was subsequently arrested and charged with unlawful possession of a controlled substance.

During cross-examination at Parsons's bench trial, Detective Humberson admitted that he was "not the personal handler of [the] specific confidential source" of information that led to Parsons's arrest, but that a Detective Freeman [1] was the informant's "main handler." According to Detective Humberson, Detective Freeman

was off duty when the informant contacted him, so he directed the informant to call Detective Humberson and relay the tip. Parsons's counsel immediately made an oral motion to suppress the search, arguing that because Humberson did not personally know the informant to be reliable, "the reason for stopping Mr. Parson[s] was not justified." The trial court denied Parsons's motion, holding that on the basis of the collective knowledge doctrine, Detective Humberson "[did]n't have to know that [the source was] reliable.... He [did]n't have to know it personally.... What one knows, they all know." Parsons's counsel initially argued that that was not "necessarily the standard," but after the trial judge repeated her conclusion, counsel did not object further. He revisited the issue during his closing, however, and argued that despite the court's ruling that "what one officer knows, the other officers know," there was still no evidence of the informant's reliability, and Humberson's "affidavit that was submitted for the arrest warrant ... [was] insufficient and not correct." The trial judge still was not persuaded, ruling: "The Court was not troubled with the issue about the confidential informant, because the Court understood Detective Humberson to basically say that the confidential informant was ... Detective Freeman's confidential informant.... And whatever information they received, the defendant matched the description and when they searched defendant, they found the drugs."

## II. Discussion

 As a preliminary matter, we reject the government's argument that Parsons waived his objection to the search by not filing a pretrial motion to suppress

---

1. Detective Freeman's first name is not in the record.

evidence. The record indicates that Parsons's counsel became aware that Detective Humberson lacked personal knowledge of the informant's reliability only upon cross-examination. "Objections to the admission of evidence are waived when they are not raised in a pretrial motion to suppress the evidence, unless opportunity therefor did not exist or the *defendant was not aware of the grounds for the motion.*" *Simmons v. United States,* 999 A.2d 898, 902 (D.C.2010) (emphasis added) (quotation marks omitted).

 We also reject the government's argument that this issue is unpreserved on appeal. The essence of Parsons's Fourth Amendment claim was made clear during his closing argument, when his counsel argued that Detective Humberson's unsupported assertion of the informant's reliability, standing alone, was "insufficient and not correct." Combined with Parsons's initial objection to the admission of the drugs, the trial court was fairly apprised that he was challenging the sufficiency of the government's evidence that the informant was reliable. *See Tindle v. United States,* 778 A.2d 1077, 1082 (D.C.2001) (To avoid application of plain error standard on appeal, a trial court must be "fairly apprised as to the question[s] on which [s]he [was] being asked to rule." (alterations in original) (quotation marks omitted)). Parsons's claim, therefore, "must [instead] be addressed in the context of constitutional harmless error," *Bishop v. United States,* 983 A.2d 1029, 1037 (D.C. 2009) (quotation marks omitted), which requires reversal "unless the government can show that the error was 'harmless beyond a reasonable doubt.'" *Id.* (quoting *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)); *see also Zanders v. United States,* 999 A.2d 149, 156 (D.C.2010) ("'*Chapman* instruct[s] courts to requir[e] the beneficiary of a

constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" (alterations in original) (quoting *Fields v. United States,* 952 A.2d 859, 862 (2008))). We therefore consider "not what effect the constitutional error might generally be expected to have upon a reasonable [factfinder], but rather what effect it had upon the guilty verdict in the case at hand." *Zanders,* 999 A.2d at 156 (quotation marks omitted).

 The doctrine of collective knowledge is "firmly established in this jurisdiction," and provides that although individual officers may not have sufficient knowledge to establish probable cause, the "information collectively known, even if not communicated by one officer to the other, [can be] sufficient." *In re M.E.B.,* 638 A.2d 1123, 1129–30 (D.C.1993); *see also Smith v. United States,* 358 F.2d 833, 835 (D.C.Cir. 1966) ("The correct test is whether a warrant if sought *could have* been obtained by law enforcement agency application which disclosed its corporate information, not whether any one particular officer could have obtained it on what information he individually possessed."). We take no issue with the collective knowledge doctrine itself, merely with how the trial court applied it at Parsons's trial.

 The Fourth Amendment protects a person "from unreasonable searches and seizures, and the reasonableness of an infringement on personal liberty is determined by whether the information on which the police acted provided reasonable articulable suspicion or probable cause." *United States v. Boxley,* 985 A.2d 1108, 1111–12 (D.C.2009) (quotation marks omitted). In order to "make an independent assessment of the sufficiency of the basis for the [search], ... the judge must be apprised of sufficient facts to enable him [or her] to evaluate the nature and

reliability of that information." *Milline v. United States,* 856 A.2d 616, 619 (D.C. 2004) (second alteration in original) (quotation marks omitted). "A court may not simply rely on a police officer's conclusory assertions in deciding whether a search or seizure was justified under the Fourth Amendment, but rather must evaluate the facts underlying those assertions." *Id.* (quoting *Sanders v. United States,* 751 A.2d 952, 955 (D.C.2000)).

When determining if an informant's tip supplied law enforcement with probable cause, "a judicial officer should consider the totality of the circumstances, taking into account 'an informant's veracity, reliability, and basis of knowledge.'" *Barrie v. United States,* 887 A.2d 29, 31 (D.C.2005) (quoting *Illinois v. Gates,* 462 U.S. 213, 230–31, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). "Along with an informant's basis of knowledge of criminal activity, the informant's general credibility and the reliability of the information he or she provides are important factors in a probable cause assessment." *Barrie,* 887 A.2d at 31–32 (quoting *Parker v. United States,* 601 A.2d 45, 49 (D.C.1991)). We have held that " 'an informant's history of supplying prior productive information is a most important guide to establishing reliability and credibility.'" *Boxley,* 985 A.2d at 1112 (quoting *Goldston v. United States,* 562 A.2d 96, 99 (D.C.1989)); *see also Sanders,* 751 A.2d at 955 ("Perhaps the most telling indicia of reliability can be a tipster's track record, *i.e.* the number, frequency, content, accuracy (in both innocent and non-innocent detail), and productivity of any past tips.").

Indeed, our case law reflects the importance of an informant's "track record" to the reliability analysis. *See, e.g., Porter v. United States,* 7 A.3d 1021, 1023 (D.C. 2010) (crediting the fact that "[o]ver a period of ten years, the informant had never given ... false information"); *Boxley,* 985 A.2d at 1112 (informant's tips had "result[ed] in eleven arrests pertaining to drugs"); *Barrie,* 887 A.2d at 30–31 (officer testified that he had "worked with the informant on twenty-five cases and had found him to be reliable in all"); *Goldston,* 562 A.2d at 97 (the informant had, "over the previous eighteen months, ... provided [the officer] with accurate and reliable information on eleven occasions ... [and] had never supplied the police with inaccurate information"); *Jefferson v. United States,* 476 A.2d 685, 687 (D.C.1984) ("[T]he police officers testified at the suppression hearing ... [that] the informant had given information on at least nine occasions, and on each of these occasions the information led to arrests and the recovery of narcotics."). In addition to an informant's track record, "we have noted that other ancillary issues also come into play ... includ[ing] employment, personal attributes favoring accuracy in observation and reporting, reputation with others, personal connection with the suspect, any circumstances suggesting probable lack of motivation to falsify, and association with known criminals." *Goldston,* 562 A.2d at 99 (quotation marks omitted); *see also Barrie,* 887 A.2d at 32 (factoring the informant's "continued employment, his independence from drugs and alcohol, and his current ability to remain out of the criminal justice system" into the totality of the circumstances considered).

The problem in the present case is that, even applying the collective knowledge doctrine, there was no testimony from which the trial court could have judged the informant's credibility. Detective Humberson was not the confidential informant's handler; in fact he had never dealt with the informant prior to the day of Parsons's arrest. Detective Freeman, who *was* the handler, presumably could have testified at

Parsons's trial as to the informant's track record and the existence of other virtuous qualities, but he did not. It appears from the record that the trial court "simply rel[ied] on [Detective Humberson's] conclusory assertions in deciding whether [his search of Parsons] was justified" and did not, as required by our case law, "evaluate the facts underlying those assertions." *Milline*, 856 A.2d at 619; *see also Sanders*, 751 A.2d at 955 (reversing and remanding because the "tipster's track record was thinly developed in the trial court").

The trial court's error certainly was not harmless beyond a reasonable doubt, because Parsons's conviction was based entirely upon the fruits of a search for which probable cause was not estab-lished at trial. We therefore reverse Parsons's conviction and remand for a new trial. *See Thomas v. United States*, 557 A.2d 599, 601 (D.C.1989) (en banc) (re-trial is permitted if the "total evidence admitted by the trial court [during the first trial]— whether erroneously or not—would have been sufficient to sustain a guilty verdict.").

*Reversed and remanded.*