**Michael JEFFERSON, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 04–CF–1589.

District of Columbia Court of Appeals.

Submitted Sept. 14, 2006.

Decided Sept. 21, 2006.

Paul J. Riley, appointed by the court, was on the brief for appellant.

Kenneth L. Wainstein, United States Attorney, and Roy W. McLeese III, Elizabeth Trosman, Yvonne Lee, and John W. Borchert, Assistant United States Attorneys, were on the brief for appellee.

Before FARRELL and REID, Associate Judges, and STEADMAN, Senior Judge.

PER CURIAM:

Appellant pled guilty to attempted distribution of heroin, while preserving his right to appeal the denial of his motion to suppress the heroin. *See* Super. Ct. Crim. R. 11(a)(2). We hold that the police had probable cause to arrest appellant and search him incident to the arrest (the search yielding heroin) because of his distinctive actions in twice removing small objects from the crotch area of his trousers—the second time after seemingly resupplying himself from a nearby car—and transferring the second object to another person. We therefore affirm.

## I.

From a nearby observation post in a "high drug area," Officer Sowers of the Metropolitan Police saw appellant standing and conversing with another man, Orlando Carlyle. With his left hand, appellant reached into the inside front or crotch area of his pants and removed a small object which he looked at momentarily, before inserting it back into his crotch. He then turned away from Carlyle and walked to a parking lot near the officer, where he disappeared momentarily behind a white cargo van. Sowers heard a vehicle door close—apparently the door of the car next to the white van—and seconds later appellant re-emerged in view and rejoined Carlyle. He again reached into his crotch area and then handed Carlyle a small object retrieved therefrom. Carlyle did not

hand him anything in return, and walked away. Officer Sowers had previously seen "the same activity," *i.e.*, "one-way" transfers, "repeatedly in that area" of the city,[1] and in most of those cases the object transferred had turned out to be drugs.

Sowers alerted an arrest team, whose members stopped appellant and Carlyle in different locations more or less simultaneously. Appellant was handcuffed, and when an officer asked him if he could "stand a check"—street terminology for a narcotics search—appellant replied "yes." The officers searched appellant (before doing so they asked him if he had any drugs on him and he answered "no") and retrieved four ziplock bags of heroin from the crotch area of his underwear, as well as the key to a station wagon parked next to the white van. They found seventy more small ziplock bags of heroin in the station wagon.[2]

The trial judge, after considering "the totality of the circumstances" witnessed by Sowers from the observation post, concluded that the police had probable cause to arrest appellant and conduct a search of the area of his person where they reasonably believed he had secreted drugs.[3]

## II.

■ The probable-cause standard is incapable of precise definition or quanti-

fication into percentages because it deals with probabilities and depends on the totality of the circumstances. We have stated, however, that the substance of all the definitions of probable cause is a reasonable ground for belief of guilt, and that the belief of guilt must be particularized with respect to the person to be searched or seized. * * * To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.

*Maryland v. Pringle,* 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (internal quotation marks and citations omitted); *see also Coles v. United States,* 682 A.2d 167, 168 (D.C.1996) (citation omitted) (" 'Probable cause is a flexible, common-sense standard' that 'does not demand any showing that [the officer's belief ...] be correct or more likely true than false.' "). Whether probable cause has been shown is ultimately a legal question on which we make an independent determination. *See Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

■ We have repeatedly sustained probable cause determinations when police have observed a "two-way" exchange of

---

1. Indeed, he had witnessed such transfers approximately "a hundred times a month."

2. The simultaneous stop of Carlyle yielded a packet of opiates which he had placed in his mouth and tried to spit out as the police approached him. The stop of Carlyle and discovery of drugs in his possession has no bearing on our analysis. That is to say, we do not reach the government's argument that the "collective knowledge" doctrine justifies imputing knowledge of Carlyle's actions to the officers who arrested appellant.

3. The government on appeal, besides defending the probable cause determination, argues

that appellant consented to the search of his person by answering "yes" to the question whether he could "stand a check." The trial judge rejected this argument, concluding that because appellant was "in custody [at the time] there could be no freely given consent to search" his person. The government responds that the judge erred in reasoning that custody itself negates voluntary consent, quoting *United States v. Watson,* 423 U.S. 411, 424, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) ("[T]he fact of custody alone has never been enough in itself to demonstrate a coerced ... consent to search."). In view of our disposition of the appeal, we need not consider the government's reliance on consent.

objects for currency in high-drug areas, even when they cannot discern whether contraband has been exchanged.[4] Typically, when all that has been observed is a one-way transfer of an unidentified object, that will not provide probable cause to arrest or search the transferor, sometimes not even reasonable suspicion for a stop under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).[5] But we have been careful to explain that a two-way exchange of apparent drugs for money is not a precondition to a finding of probable cause. Rather, "the real key in these cases is how the observed transaction fits into the totality of the circumstances. If there are sufficient other factors present, one need not always have a completed two-way transaction to create probable cause." *Davis v. United States,* 781 A.2d 729, 737 (D.C.2001).

■ Here, Carlyle was not seen to give or attempt to give appellant anything in return for the small object. Nevertheless, the distinctive circumstances witnessed by Officer Sowers combined to give him reason to believe that appellant had just transferred narcotics, in violation of D.C.Code § 48–904.01(a)(1) (2001). First is the fact that appellant, after conversing with Carlyle, reached into his crotch area—a uniquely private part of the body not normally used for carrying lawfully-held personal effects—and removed a small object which he then examined. Sowers testified that in his experience it was "normal" for drug dealers to keep "the stash ... in their crotch or in their rear area." And the trial judge too observed (with considerable support in common sense), "I am trying to think if there is any explanation for someone exchanging something or giving something from their crotch.... I can't think of anything that would be lawful." *See, e.g., Dickerson v. United States,* 677 A.2d 509, 513 (D.C. 1996) (upholding officer's "plain feel" of suspected narcotics stashed in defendant's crotch based in part on officer's experience that in approximately fifty cases the officer had recovered drugs from a person's crotch area (collecting cases)); *United States v. Rodney,* 294 U.S.App. D.C. 9, 11, 956 F.2d 295, 297 (1992) (noting that drug dealers "frequently hide drugs" in their crotch area); *United States v. Winfrey,* 915 F.2d 212, 219 (6th Cir.1990) (Krupansky, J., concurring) (describing crotch area as "a favorite place used by drug couriers to conceal drugs").

Moreover, seemingly dissatisfied with the item he examined, appellant replaced it in his crotch and, out of sight but within earshot of the officer, walked to a car and apparently opened the door; moments later he returned to Carlyle, again reached into his crotch area, and handed Carlyle a small object pulled therefrom. The inference that he had gone to the car to replenish his supply of a substance he thought required utmost concealment from prying eyes or hands—in short, contraband—was a reasonable one for Sowers to draw. And the fact that Carlyle did not give him money in return was not unusual to the officer, who had witnessed repeated instances of drugs recovered from recipients in this neighborhood after similar "one-way" transfers.

Altogether, viewing the circumstances from the standpoint of a "reasonable and prudent [police officer], not [a] legal technician[ ]," *Ornelas,* 517 U.S. at 695, 116

4. *See, e.g., Prince v. United States,* 825 A.2d 928, 932–33 (D.C.2003); *Allison v. United States,* 623 A.2d 590, 595 n. 9 (D.C.1993); *Tobias v. United States,* 375 A.2d 491, 492–94 (D.C.1977).

5. *See, e.g., Duhart v. United States,* 589 A.2d 895, 899–901 (D.C.1991); *In re T.T.C.,* 583 A.2d 986, 990 (D.C.1990); *Waters v. United States,* 311 A.2d 835, 837 (D.C.1973).

S.Ct. 1657 (citation and quotation marks omitted), Sowers had probable cause to believe that appellant had just handed Carlyle narcotics, and was justified in ordering his arrest and search incident thereto. Appellant's tell-tale concealment of the objects in his crotch, and his related actions, provided an "entirely reasonable inference," *Pringle*, 540 U.S. at 372, 124 S.Ct. 795, that he had just committed a crime that a search would confirm.

*Affirmed.*