NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0135n.06

No. 11-2589

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
**Feb 05, 2013**
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Western |
| CHRISTOPHER JOSEPH ATKINS | ) | District of Michigan |
| | ) | |
| Defendant-Appellant. | ) | |

Before:     BOGGS and WHITE, Circuit Judges; and McCALLA, Chief District Judge.[*]

BOGGS, Circuit Judge.  Christopher Atkins appeals his conviction and sentence for two counts of being a felon in possession of a firearm and one count of being a felon in possession of body armor.  He challenges the denial of his motion to suppress evidence based upon the alleged illegality of a traffic stop in August 2010.  Atkins also claims that the district court impermissibly restricted his right to allocute during his sentencing by refusing to consider a handwritten memorandum tendered by him on the day of his sentencing.  Both of these claims are without merit, and we affirm Atkins's conviction and sentence.

I

---

[*] The Honorable Jon P. McCalla of the United States District Court for the Western District of Tennessee, sitting by designation.

At approximately 12:45 AM on August 12, 2010, Lansing police officers Jerry Blow and Monika Good responded to reports of a brawl outside of Cheetah's Gentlemen's Club, during which one of the combatants brandished a handgun. The report described the assailant as a thin, black male wearing a white shirt and black pants, who fled the scene heading north on Pennsylvania Avenue in a silver Chevy Blazer with two black females. As the officers neared South Cedar Street, the closest thoroughfare west of the club, they received a report that the Blazer was no longer on Pennsylvania. They decided to head north on South Cedar, and shortly thereafter observed a "tannish" Blazer heading south with two black females in the front and what appeared to be a third occupant in the back seat.

After receiving backup, the officers initiated a stop, called the occupants out of the vehicle, performed a protective frisk, and placed each occupant in a separate police cruiser. Atkins, the lone male in the group, was wearing a white shirt and black pants. He had blood on his shirt, facial injuries consistent with having been in a fight, and admitted to having just left Cheetah's. Officer Good, concerned by the reports of a weapon being involved, performed a search of the passenger compartment of the vehicle. She found a handgun located in the center console of the car, within reaching distance of the back seat. Officers placed Atkins under arrest after finding the weapon. Police subsequently transported Atkins to a local hospital for treatment of his injuries. He fled custody during his treatment.

Police caught up with Atkins five months later. After receiving information that he was hiding at an area residence, police set up surveillance around the neighborhood. On January 20, 2011, police observed Atkins jumping between the yards of the targeted property and an adjacent

residence with a duffle bag in hand. Atkins attempted to flee the area. Police apprehended him and retrieved the duffle bag, which contained two handguns, an assault rifle, body armor, and what appeared to be explosives.

The government charged Atkins with two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and one count of being a felon in possession of body armor, in violation of 18 U.S.C. § 931(a)(1). Atkins moved to suppress the handgun found in the Blazer and to dismiss the charges, arguing that the police lacked reasonable suspicion to make the stop that set off the entire chain of events. After holding an evidentiary hearing, the district court denied Atkins's motion to suppress, finding that the totality of the circumstances justified the stop.

Atkins went to trial and was convicted on all three counts. During his sentencing, Atkins attempted to file a handwritten sentencing memorandum and motion for downward departure and variance. Though the memorandum was made part of the record, the judge did not consider it, as it simply reargued Atkins's claimed innocence. The district judge imposed consecutive 120-month sentences for each firearm count and a concurrent 36-month sentence for the body-armor count.

II

On appeal from a district court's denial of a motion to suppress, we review the court's findings of fact for clear error and its conclusions of law *de novo*. *United States v. Smith*, 594 F.3d 530, 535 (6th Cir. 2010). "A factual finding will only be clearly erroneous when, although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Ibid.* (internal quotation marks omitted). We

consider the evidence in the light most favorable to the prevailing party, which in this case is the government. *Ibid.*

Atkins does not challenge the validity of the search of the Blazer. Rather, he only protests the initial stop. We evaluate such claims under the familiar framework of *Terry v. Ohio*, 392 U.S. 1 (1968), and its progeny. "The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *Terry*, 392 U.S. at 9). An investigatory stop complies with the Fourth Amendment when police are able to demonstrate that they had a "reasonable suspicion to believe that criminal activity may be afoot." *Ibid.* (internal quotation marks omitted). Under this standard, the government must be "'able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion' as measured by an objective standard." *United States v. Vite–Espinoza*, 342 F.3d 462, 466 (6th Cir. 2003) (quoting *Terry*, 392 U.S. at 21–22). This standard demands less than probable cause but more than a "mere hunch." *Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006). We determine the existence of reasonable suspicion by assessing the "totality of the circumstances" to see whether the detaining officer had a "particularized and objective basis" for suspecting wrongdoing. *Arvizu*, 534 U.S. at 274.

### III

We agree with the district court that Officers Blow and Good had reasonable suspicion to pull over the Blazer. The officers observed a vehicle matching the description of a vehicle seen fleeing the scene of a reported crime, traveling in the vicinity of the crime shortly after the crime. Far from

being premised on a "mere hunch" as Atkins would have us believe, a scenario such as this one is, as the district court aptly put it, "what reasonable suspicion is all about."

Atkins makes much of some disparity between the reported and observed color of the Blazer. However, we can find no case law, and Atkins does not cite any,[1] in which we have found a stop to be unreasonable based on such minor differences. To the contrary, we have found stops to be reasonable when the description given to officers was far more general and far more inaccurate. For instance, in *United States v. Hurst*, 228 F.3d 751 (6th Cir. 2000), a panel of this court held that the stop of a dark-blue Mercury Cougar containing three passengers was reasonable based upon reports of a dark-colored, two-seat Ford Thunderbird fleeing the scene of a burglary. *Id.* at 756–57. The court so held because the totality of the circumstance—the physical proximity of the car to the scene of the crime, the temporal proximity of the car's sighting to the commission of the crime, and the similarity of other physical features—gave rise to a reasonable suspicion of criminal activity despite any differences from the reported model of the subject car. *Ibid.* Similarly, a minor difference in reported color (silver v. "tannish") cannot undermine the validity of a stop supported by other physical similarities, as well as temporal and physical proximity to the reported crime.

---

[1]Atkins cites *United States v. Jackson*, 188 F. App'x 403 (6th Cir. 2006), in support of his position. This case provides no support for Atkins. The police in *Jackson* pulled over a green, east-bound Dodge Neon driven by a black man with a short -sleeve shirt and ample hair after receiving reports that a green, west-bound BMW driven by a balding black man with a long-sleeve shirt was involved in a drug crime. *Id.* at 404–06. Despite multiple interjections by police dispatch that the car observed was the wrong car, police stopped the Neon because "it was the only green vehicle on [the road] at the time." *Id.* at 405. Quite unlike the present case, the entire body of facts used to justify the stop in *Jackson* was incorrect and, indeed, the officers knew as much at the time of the stop.

Equally unavailing is Atkins's argument that it was unreasonable to pull the Blazer over because it was heading back towards the scene of the crime. This contention appears to be grounded in large part on Officer Good's testimony that it was contrary to her experience for a fleeing suspect to head back towards the scene of a crime. Like his first, this argument ignores the other strong facts and inferences supporting the stop. Though it is true that Officer Good said it is odd for a suspect to move back in the direction of the crime, Atkins's behavior comported with another common factor of criminal escape noted by Officer Good: suspects usually do not stay on the same road or direction used in their initial flight from the scene. Finding no error in the district court's judgment, we affirm the denial of the motion to suppress.

IV

Finally, Atkins claims that the district court impermissibly restricted his right to allocute by refusing to consider a handwritten supplemental memo that he tendered during his sentencing. Such contention is without merit. As Atkins did not object to the district court's refusal to consider the memo, we review for plain error. *United States v. Carter*, 355 F.3d 920, 926 (6th Cir. 2004).

To the extent that the memo raised additional objections to the presentence report, it was untimely and the district court was right to disregard it. Fed. R. Crim. P. 32(f). To the extent that the memo simply reargued Atkins's denial of guilt, the district court acted within its discretion to disregard it. *See Carter*, 355 F.3d at 926 ("The judge does not have to let the defendant re-argue the case at sentencing." (internal quotation marks omitted)). And finally, to the extent that the memo provided evidence in mitigation of Atkins's criminal behavior, the district court did not prejudice Atkins by refusing to consider it. The court provided Atkins with a full, fair, and unrestricted

opportunity to address the court orally, an opportunity that he used to raise many of his complaints regarding the strength of the government's case contained in his supplemental memo. Only after hearing from Atkins did the court note that it would not entertain reargument of Atkins's guilt. By adopting this course of action, the district court did not restrict Atkins's right to allocute. We therefore reject his argument.

V

For the foregoing reasons, we **AFFIRM** the judgment of the district court.