BROWN, Circuit Judge,
dissenting:
The court today articulates a broad new rule — one that essentially removes most species of unlawful entry from the criminal code. Officers must prove individuals occupying private property know their entry is unauthorized; otherwise police lack probable cause to make arrests. Moreover, any plausible explanation resolves the question of culpability in the suspects’ favor. Thus, unless the property is posted with signs or boarded up and attempts to prevent access have been deliberately breached, ie., there is direct evidence of unauthorized entry, law enforcement’s options are limited to politely asking any putative invitee to leave.
I respectfully dissent.
I
Summary resolution is inappropriate where — as here — the probable cause determination turns on close questions of credibility, as well as the reasonability of inferences regarding culpable states of mind that officers draw from a complicated factual context. See Media Gen., Inc. v. Tomlin, 387 F.3d 865, 871 (D.C.Cir.2004) (“[Where] the material facts are susceptible to divergent inferences ... the [ ] Court ha[s] no basis upon which to grant summary judgment.”).
The Court concludes that, as a matter of law, no reasonably prudent officer could believe Plaintiffs entered unlawfully because the undisputed evidence shows an individual with (illusory) authority invited their entry, vitiating Plaintiffs’ formation of the requisite intent. Maj. Op. at 21. Yet the mere presence of an invitation by one with ostensible authority is not dispos-itive if, under the totality of the circumstances, the officers could still conclude the suspects knew or reasonably should have known their invitation was against the will of the lawful owner. See Ortberg v. United States, 81 A.3d at 308 (D.C.2013). The absence of direct, affirmative proof of a culpable mental state is not the same thing as undisputed evidence of innocence.
The court relies on two primary precedents to raise the bar, but neither Ortberg v. United States, 81 A.3d 303 (D.C.2013) nor United States v. Christian, 187 F.3d 663 (D.C.Cir.1999) justifies the impossible standard for finding probable cause the court now proposes. Channeling Dr. Frankenstein, the court cobbles together a few recognizable parts to build a grotesque and unnatural whole. In Ortberg, the court recognized a bona fide belief in the right to enter as a defense to a charge of unlawful entry. Ortberg was not a probable cause case; it confirmed that all elements of unlawful entry, including req *32 uisite criminal intent, are necessary to sustain a conviction, while emphasizing that bona fide belief must have some reasonable basis. It is “not sufficient that an accused merely claim a belief of a right to enter.” Id. at 309, n. 12.
United States v. Christian does impose a higher probable cause standard but that case is distinguishable. First, Christian involved a specific intent crime. See generally Gasho v. United States, 39 F.3d 1420, 1428 (9th Cir.1994) (“[A]n officer need not have probable cause for every element of an offense[,] ... however, when specific intent is a required element of the offense, the arresting officer must have probable cause for that element.”). Second, Christian did not require direct evidence. The court cited Adams v. Williams, 407 U.S. 143, 149, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), acknowledging that the circumstances surrounding an arrest may support the necessary inference of unlawful possession. Christian, 187 F.3d at 667. The problem with the government’s argument in Christian was not the absence of direct proof of criminal intent, it was the absence of any evidence whatsoever of unlawful possession. “[T]he officers [therefore] lacked probable cause to believe a crime had been committed.” Id.
Today’s decision undercuts the ability of officers to arrest suspects in the absence of direct, affirmative proof of a culpable mental state; proof that must exceed a nebulous but heightened sufficiency burden that the Court declines to specify. The Court’s decision broadly extends Ort-berg and Christian to apply standards designed for materially disparate contexts to the probable cause inquiry for general intent crimes. Cf. Pierce v. United States, 402 A.2d 1237, 1246 n. 2 (D.C.1979) (“Sentences out of context rarely mean what they seem to say.”). As a result, the Court finds officers may only lawfully arrest suspects for unlawful entry where the officers have evidence affirmatively proving each element of an offense, including clear proof of what the suspect knew or reasonably should have known. But cf. 1 Corinthians 2:11 (“For who knows a person’s thoughts except their own spirit within them?”). This is tantamount to an invitation to abuse vacation rentals or houses being marketed for sale or lease where prospective tenants can gain entry and retain or misappropriate a key or a lockbox combination, or leave a point of entry unsecured. Such a heightened threshold is not called for under our precedents. For general intent crimes, “[probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction,” Adams v. Williams, 407 U.S. 143, 149, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). The proper inquiry is not whether the element of knowledge was conclusively satisfied; it is instead whether, based on the totality of the circumstances, officers could reasonably believe Plaintiffs committed the offense of unlawful entry.
The Court concludes there was insufficient evidence to support arrest because the evidence that Plaintiffs were invitees was uncontradicted, noting the presence of semi-nude dancing and the semi-furnished state of the home are consistent with Plaintiffs’ contentions of their innocent attendance at a party. Maj. Op. at 23-24. A jury might credit Plaintiffs’ depiction of events, their claims of innocent reliance upon a credible invitation, and conclude they lacked knowledge of the unlawfulness of their entry. However, for purposes of summary judgment, Plaintiffs’ lack of knowledge must not be merely “consistent” with the evidence gathered by the police. Instead, Plaintiffs’ lack of knowledge must be the only reasonable inference the officers could draw.
*33 Here the totality of the circumstances could cause reasonable minds to question whether Plaintiffs were as blameless as the attendees of a Sunday brunch whose imprudent host has overstayed her lease. Contra Maj. Op. at 22 (finding this case indistinguishable from such a scenario). The officers responded to a call reporting illegal activity in a home at least some residents of the neighborhood knew to be vacant. As the officers entered, the party-goers’ first response was to scatter into different rooms or hide. The house’s interior was bare and in disarray; beyond fixtures or large appliances, it contained only folding chairs and food, and one room upstairs had a bare mattress and lighted candles — along with “females ... that had provocative clothing on with money in ... their garter belt[s].” Parker Dep. 14:12-16.[1]
After rounding up and interviewing the partygoers, the officers found their claim to lawful entry was an invitation from the house’s supposed tenant, Peaches, who was “throwing a party.” However, Peaches was not actually present when the officers arrived on the scene. The partygoers also gave inconsistent explanations for the party to which they had allegedly been invited. Some claimed to be attending a birthday party while others insisted it was a bachelor’s party; in any event, none could identify the guest of honor.
When ultimately reached by telephone, Peaches admitted to inviting various party-goers, and claimed she had permission to enter, an assertion she quickly recanted in a series of conflicting answers she made to investigators before becoming evasive and hanging up. The officers also confirmed from the actual owner that the house had been vacant since its last resident’s death, the current owner was attempting to rent the property out, and neither Peaches nor anyone else had the owner’s permission to enter or use the premises.
The totality of the evidence does not need to show the officers’ beliefs regarding the unlawfulness of Plaintiffs’ entry were “correct or more true than false. A practical, nontechnical probability ... is all that is required.” Texas v. Brown, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). The surrounding context may not convince a jury to find probable cause. But likewise, taken in the light most favorable to the officers, the facts are not so clear cut that no reasonable officer could believe the partygoers knew or should have known Peaches’ invitation was not credible or that their entry into the home was not properly authorized.
This is not a case where officers “turn[ed] a blind eye toward potentially exculpatory evidence in an effort to pin a crime on someone.” Ahlers v. Schebil, 188 F.3d 365, 372 (6th Cir.1999). Nor did officers lack “any” evidence Plaintiffs committed the offense of unlawful entry. See Christian, 187 F.3d at 667. The circumstances surrounding the arrest were sufficient to support the inference that the suspects knew or reasonably should have known their entry was unlawful.
“[T]he real key ... [to probable cause] is how [an] observed transaction fits into the totality of the circumstances.” Jefferson v. United States, 906 A.2d 885, 888 (D.C.2006) (noting observation of a one-way transfer of an unidentified object can, in some cases, support probable cause for an unlawful two-way exchange of drugs for money). The officers did not ignore Plain *34 tiffs’ potentially exculpatory claims of invitation. See Fridley v. Horrighs, 291 F.3d 867, 874-75 (6th Cir.2002) (officers may not ignore exculpatory facts that tend to negate an element of an offense). Instead, during the course of a fast-moving investigation, officers considered and investigated Plaintiffs’ statements, and rendered a determination that their claims of bona fide good faith were insufficiently credible to overcome the surrounding facts and circumstances. See Minch v. D.C., 952 A.2d 929, 937-38 (D.C.2008) (noting police suspicion was reasonably based on appellant’s evasiveness and equivocation, particularly in a fast-moving investigation).
The very purpose of a totality of the circumstances inquiry is to allow law enforcement officers to approach such ambiguous facts and self-interested or unreliable statements with an appropriately healthy dose of skepticism, and decline to give credence to evidence the officers deem unreliable under the circumstances. Cf. Illinois v. Gates, 462 U.S. 213, 243 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (“In making a determination of probable cause the relevant inquiry is not whether particular conduct is ‘innocent’ or ‘guilty,’ but the degree of suspicion that attaches to particular types of non-criminal acts.”). The Court’s holding to the contrary ensures that all but the most implausible claims of invitation must be credited and radically narrows the capacity of officers to use their experience and prudent judgment to assess the credibility of the self-interested statements of intruders who claim to have been “invited” and have not overtly forced their entry into a home.
In light of the facts known to the officers at the time of the arrests, summary judgment is unwarranted on the question of probable cause for unlawful entry. From their investigation, the officers knew the house was an unoccupied private rental dwelling, which would likely not require a sign or express warning forbidding entry. See McGloin v. United States, 232 A.2d 90, 91 (D.C.1967). They further determined none of the Plaintiffs owned or rented the house; that the property was, in fact, vacant; and the true owner had provided neither the partygoers nor any tenants with permission to enter, see Culp v. United States, 486 A.2d 1174, 1177 n. 4 (D.C.1985) (“[T]he arresting officers’ knowledge that the property is vacant and closed to the public is material to a determination of probable cause.”). Plaintiffs’ party was taking place in a home so sparsely furnished as to be consistent with a vacant building; the guests’ immediate response to the presence of police was to run and hide, an action suggestive of consciousness of guilt; the partygoers gave conflicting accounts about “why” the party was being held; and they purported to rely on an invitation from a “tenant” who was not actually present. When reached by telephone the “tenant” gave conflicting accounts as to her own permission to access the home, finally admitted she lacked any right to use the house, and — upon further questioning — became evasive and yelled at officers before hanging up.
Based on this evidence, taken in the light most favorable to the officers, a reasonable person could disbelieve Plaintiffs’ claim of innocent entry based on a credible invitation. See Parsons v. U.S., 15 A.3d 276, 280 (D.C.2011) (“[T]he informant’s general credibility and the reliability of the information he or she provides are important factors in a probable cause assessment”); see also United States v. Project on Gov’t Oversight, 454 F.3d 306, 313 (D.C.Cir.2006) (“Evaluation of the credibility of witnesses must be left to the factfin-der, and the need to assess the credibility of witnesses is precisely what places this dispute outside the proper realm of summary judgment.”). A rational juror could *35 find the officers reasonably believed Plaintiffs either knew, or should have known, Peaches’ invitation was unauthorized and that use of the house was not otherwise permissible.
At its fringes probable cause is a nebulous construct. See Jefferson v. United States, 906 A.2d 885, 887 (D.C.2006). (“The probable-cause standard is incapable of precise definition ... because it deals with probabilities and depends on the totality of the circumstances.”). In factually complex circumstances, like the present one, the probable cause inquiry requires weighing the credibility of statements from multiple parties and witnesses, and consideration of the reasonable inferences officers may draw from idiosyncratic facts. Resolution of such a credibility laden and fact specific inquiry is properly reserved for the jury. The Court errs in concluding such a case is appropriate for preliminary resolution at summary judgment. See George v. Leavitt, 407 F.3d 405, 413 (D.C.Cir.2005) (“[A]t the summary judgment stage, a judge may not make credibility determinations, weigh the evidence, or draw inferences from the facts-these are jury functions, not those of a judge ruling on a motion for summary judgment. ... Although a jury may ultimately decide to credit the version of the events described by [a defendant] over that offered by [a plaintiff], this is not a basis upon which a court may rest in granting a motion for summary judgment.”).
More troubling still, by subverting the appropriate standard for probable cause, the Court effectively excises unlawful entry from the District’s criminal code for cases where intruders claim they were invited and have not obviously and forcibly obtained entrance to a currently unoccupied private dwelling. Such a conclusion is not compelled by either our case law or common sense; officers are simply not required to credit the exonerating statements of suspected wrongdoers where the totality of the circumstances suggests such claims should be treated with skepticism.
II
Even assuming Plaintiffs’ arrests were not supported by adequate probable cause for unlawful entry, qualified immunity shields the officers from individual liability for Plaintiffs’ section 1983 claims because the officers’ “conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (emphasis added); see also DeGraff v. D.C., 120 F.3d 298, 302 (D.C.Cir.1997) (“[T]he scope of qualified immunity must be evaluated using the [] ‘objective reasonableness’ criteria.”).
For purposes of qualified immunity, “ ‘[c]learly established’ ” ... means that “[t]he contours of the right must be sufficiently clear that a reasonable [officer] would understand that what he is doing violates that right.” Wilson v. Layne, 526 U.S. 603, 614-15, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). While, “[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has been previously held unlawful,” id., courts should nonetheless “examine the asserted right at a relatively high level of specificity, and on a fact-specific, case-by-ease basis,” O’Malley v. City of Flint, 652 F.3d 662, 668 (6th Cir.2011). And in reviewing the pre-existing law, the officers’ “unlawfulness must be apparent” to support a finding that qualified immunity does not apply. Wilson, 526 U.S. at 615, 119 S.Ct. 1692; Wardlaw v. Pickett, 1 F.3d 1297, 1301 (D.C.Cir.1993) (suggesting the “unlawfulness of the defendants [must be] so apparent that no rea *36 sonable officer could have believed in the lawfulness of his actions”).
Here the pre-existing law of unlawful entry is not so clear that a reasonable officer would have known he lacked probable cause to arrest Plaintiffs. The officers were faced with an unusual factual scenario, not well represented in the controlling case law. The property where Plaintiffs were found was somewhere between an occupied private dwelling and a vacant or abandoned building. The situation the officers encountered rests uneasily between two distinct strands of District law. Compare McGloin, 232 A.2d at 91 (“[N]o one would contend that one may lawfully enter a private dwelling house simply because there is no sign or warning forbidding entry.”) with Culp, 486 A.2d at 1177 (noting boarded windows gives sufficient warning an abandoned building should not be entered).[2]
Neither line of cases unambiguously controls. The law of unlawful entry for abandoned properties has traditionally dealt with obviously decrepit buildings, e.g., Culp, 486 A.2d at 1175 (noting the house was missing a rear door, its windows were shattered, and the interior was in “shambles”), while unlawful entry of private dwellings has generally dealt with traditionally occupied residences, apartments, or semipublic buildings. See, e.g., McGloin, 232 A.2d at 91; Bowman v. United States, 212 A.2d 610, 611-12 (D.C.1965). Neither line of cases encompasses a scenario where individuals claim to be the social guests of a tenant of a (vacant) property to which the tenant has no actual possessory interest — much less a scenario where the putative tenant is herself not present on the scene and refuses to otherwise cooperate with officers’ ongoing investigation. Moreover, to the extent the pre-existing law is broadly comparable, a reasonable person could find it supports an officer’s finding of probable cause where a trespassers claim of invitation is deemed insufficiently credible. See, e.g., McGloin, 232 A.2d at 90-91 (upholding the conviction of person found in nonpublic areas of a private apartment building, despite his excuse he was looking for a cat or a friend who lived in the building); Kozlovska v. United States, 30 A.3d 799, 800-801 (D.C.2011) (upholding the conviction of a woman who claimed an employee permitted her to use the building).
Thus, in the absence of pre-existing case law clearly establishing the contours of Plaintiffs’ rights, the officers were shielded by qualified immunity when, acting under color of state law, they reasonably arrested plaintiffs for unlawful entry. The case law of course requires officers to have some evidence the alleged trespassers committed the offense of unlawful entry. See Maj. Op. at 26-27. Yet nothing in the District’s law requires officers to credit the statement of the intruders regarding their own purportedly innocent mental state where the surrounding facts and circumstances cast doubt on the veracity of such claims. The officers were therefore entitled to the protection of qualified immunity and the “breathing room” it gives them to make reasonable — albeit potentially mistaken — -judgments under novel circumstances unexplored by the law when they took the challenged action. Ashcroft v. al-Kidd, — U.S.—, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011).

. The Court characterizes such minimalist furnishings as consistent with a new tenant. Maj. Op. at 23. But the sparseness of the house's decor is also consistent with a temporarily unoccupied home; a venue choice that reasonably discerning guests might find somewhat abnormal — though perhaps not conclusively so — for a run-of-the-mill house party.

. The Court finds it ''important[]” there was no evidence the home's true owner told Plaintiffs they were not welcome. Maj. Op. at 21. It is unclear from the case law, however, such a warning is required for a temporarily unoccupied but not obviously abandoned residence. See McGloin, 232 A.2d at 90-91.