McLEESE, Associate Judge:
Appellant Edward Morgan, Jr. challenges his conviction for possession of cocaine.- Mr. Morgan argues that the trial *1236 court erroneously denied his motion to suppress evidence. We affirm.
I.
The United States’s evidence at the suppression hearing indicated the following. On June 29, 2013, at approximately 9:00 p.m., a citizen called the police to report potential drug crimes occurring near the citizen’s residence. A fellow officer communicated the citizen’s contact information and location to Sergeant James Boteler and Officer Derek Tarr, who went to the citizen’s apartment building and spoke with the citizen. The citizen, who worked for the Department of Homeland Security, told the officers that the citizen on more than one occasion had seen what the citizen believed to be hand-to-hand drug transactions near the citizen’s apartment. The citizen further explained that, a few minutes before calling the police, the citizen saw a man on a bicycle exchange small objects with another man, after which the two parted ways. During the exchange, the man on the bicycle “reach[ed] into the back of [his] pants and pull[ed] something out [and] put it back in.” The citizen described the man as a short black male with dreadlocks, riding a red bicycle. The citizen also described the color of the man’s shirt; Sergeant Boteler at various points indicated that the citizen described the man’s shirt as “blue gray,” “purplish gray, or purple slash gray,” or “purple and grayish.”
The officers drove around the area looking for the suspect. About ten to fifteen minutes later, the citizen called Sergeant Boteler and said that the man on the bicycle was in the 1500 block of P Street, NW. Within about thirty seconds, the officers arrived at that location and saw Mr. Morgan, who was riding a red bicycle and matched the description of the suspect. The officers got out of their car, and Sergeant Boteler asked Mr. Morgan if they could talk to him for a second. Sergeant Boteler told Mr. Morgan that he matched the description of someone who may have been involved in a drug transaction and asked Mr. Morgan if he had any illegal drugs on him. Mr. Morgan denied that he did but said that he did have “some K-2 stuff.” Sergeant Boteler knew that “K-2” is a common term for synthetic eannabi-noids and that possession of certain synthetic cannabinoids has been illegal under federal law since 2012. Mr. Morgan told Sergeant Boteler that Sergeant Boteler could search him but that he did not have anything on him.
One of the officers took the K-2 out of Mr. Morgan’s pocket. Sergeant Boteler ran his hands around Mr. Morgan’s waistband and felt an object below Mr. Morgan’s waistband, underneath the back of the pants. At this point, one of the officers handcuffed Mr. Morgan. After officers tried to persuade Mr. Morgan to remove the drugs from his person, Mr. Morgan reached into the back of his pants, took out a substantial amount of crack cocaine, and dropped it on the ground.
Mr. Morgan called his wife as a witness at the suppression hearing. She testified that on the date of the arrest she saw Mr. Morgan sitting in a police car, wearing a blue t-shirt and a hat.
At the close of the suppression hearing, Mr. Morgan argued that all of the evidence should be suppressed, because the officers unlawfully stopped him in violation of the Fourth Amendment. Concluding that the stop was justified by reasonable articulable suspicion, the trial court denied the motion to suppress. The trial court then found Mr. Morgan guilty after a stipulated trial.
II.
Mr. Morgan argues that the trial court erred in finding that the officers had reasonable articulable suspicion to conduct a *1237 Terry stop. See Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (officers may conduct investigatory stop if they reasonably believe “criminal activity may be afoot”). We conclude otherwise.
A.
When reviewing a trial court’s denial of a motion to suppress, we “must view the evidence in the light most favorable to the prevailing party.” Bennett v. United States, 26 A.3d 745, 751 (D.C.2011) (internal quotation marks omitted). We draw all reasonable inferences in favor of upholding the trial court’s ruling. Milline v. United States, 856 A.2d 616, 618 (D.C.2004). “The police may briefly detain a person for an investigatory or Terry stop ... if the officers have a reasonable suspicion based on specific and articulable facts that criminal activity may be occurring.” Pinkney v. United States, 851 A.2d 479, 493 (D.C.2004) (internal quotation marks omitted). “‘[Reasonable suspicion’ is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence— ” Illinois v. Wardlow, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); see also, e.g., Immigration & Naturalization Serv. v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984) (investigative detention requires “some minimal level of objective justification”); Robinson v. United States, 76 A.3d 329, 336 (D.C.2013) (“The reasonable, articula-ble suspicion standard requires substantially less than probable cause and considerably less than proof of wrongdoing by a preponderance of the evidence. It is not onerous, but it is not toothless either.... Unparticularized suspicion and inarticulate hunches are not sufficient to sustain a Terry stop ....”) (citations and internal quotation marks omitted).
B.
We conclude that the information provided by the citizen provided the officers with reasonable articulable suspicion to conduct a Terry stop. We note at the outset that although the citizen was not named at the suppression hearing, the citizen provided contact information and spoke to the police in person. The citizen thus was an adequately reliable source of information. See, e.g., Joseph v. United States, 926 A.2d 1156, 1161 (D.C.2007) (“[IJnformation from an identified citizen is presumptively reliable.”).
1.
We conclude that the information provided by the citizen gave rise to a reasonable belief that the suspect was involved in unlawful activity. In reaching this conclusion, we rely on the citizen’s statement that the suspect “reach[ed] into the back of [his] pants and pull[ed] something out [and] put it back in” during the exchange of small objects with another man. Interpreted naturally, that statement indicated that the suspect had reached inside the rear of the suspect’s waistband. See, e.g., United States v. Scott, 987 A.2d 1180, 1185-86 (D.C.2010) (interchangeably referring to “reaching into the back of his pants,” reaching into his pants, and reaching “into the waistband of his pants”) (internal quotation marks omitted); Mothersell v. Syracuse, 289 F.R.D. 389, 398-99 (N.D.N.Y.2013) (equating attempt to “reach down into the back of his pants” and “attempt to stick his fingers inside the waistband of his pants and underwear”); Donaldson v. State, 416 Md. 467, 7 A.3d 84, 87, 93 (2010) (where officer described suspect as pulling plastic bag “from the rear of his pants,” court concludes that “keeping the items in a plastic bag in the rear of his pants was undoubtedly suspicious”). Although it is in theory possible that the citizen meant only to indicate that the suspect reached into a back pocket, *1238 rather than inside the waistband of the suspect’s pants, that does not seem to be the more natural interpretation of the citizen’s words. In any event, the Fourth Amendment requires only that the police have a reasonable basis for their actions, and we conclude that it would be objectively reasonable to understand the citizen’s statement as indicating that the suspect obtained an object from inside the waistband of his pants and then returned an object to the same location. Cf, e.g., United States v. Fury, 554 F.2d 522, 530-31 (2d Cir.1977) (“The conversations, while somewhat ambiguous at times, can be reasonably interpreted to indicate what the detective interpreted them to be.”). In arguing to the contrary, the dissent suggests that ambiguity is fatal to reasonable artic-ulable suspicion. Infra p. 1243. The law is otherwise. See, e.g., Wardlow, 528 U.S. at 125, 120 S.Ct. 673 (“Even in Terry, the conduct justifying the stop was ambiguous and susceptible of an innocent. explanation .... Terry recognized that the officers could detain the individuals to resolve the ambiguity.”); Umanzor v. United States, 803 A.2d 983, 993 (D.C.2002) (“[T]he Terry standard does not require that an officer rule out the possibility of innocent behavior, for suspicious conduct by its very nature is ambiguous, and the principal function of the investigative stop is to quickly resolve that ambiguity[J”) (internal quotation marks omitted).
We further conclude that a person’s removal and replacement of an object from inside the waistband of the back of his pants during an exchange will typically create reasonable articulable suspicion to believe that the suspect was involved in criminal wrongdoing. In the circumstances of this case, we see no plausible, innocent explanation for such conduct. To the contrary, we view such conduct as comparable to storing objects in the crotch area, which we have described as “a uniquely private part of the body not normally used for carrying lawfully-held personal effects.... ” Jefferson v. United States, 906 A.2d 885, 888 (D.C.2006) (per curiam) (finding probable cause where suspect in high-drug area who was speaking to another man reached into front crotch area of pants, removed small object, examined object, replaced object in crotch area of pants, walked over to nearby car, returned, again removed small object from crotch area, and handed object to other man). In Jefferson, we found “considerable common sense” in the trial court’s observation that it could not think of an innocent explanation for “someone exchanging something or giving something from their crotch.” Id, See also id. (describing police-officer testimony and prior court decisions noting that crotch area was common place to store illegal drugs). When the information available to the police has no plausible innocent explanation, the police have a reasonable basis to conduct an investigatory stop. See, e.g., United States v. Saucedo, 226 F.3d 782, 789-90 (6th Cir.2000) (reasonable articulable suspicion to stop defendant, because “virtually no innocent explanation could have accounted for all of the activities and circumstances witnessed by the investigators”); State v. Howard, 282 Neb. 352, 803 N.W.2d 450, 461-62 (2011) (lack of innocent explanation for defendant’s unusual travel plans weighed heavily in favor of finding of reasonable suspicion).
A number of courts have considered whether police had reasonable articulable suspicion to conduct a Teiry stop based largely or entirely on a suspect’s reaching inside his pants to retrieve or display an object. Those courts have consistently upheld the legality of the Terry stops at issue. See In re Antonio A., 2011 WL 4436459, at *1-2 (Cal.Ct.App. Sept. 26, 2011) (officer had reasonable articulable suspicion to stop suspect, where suspect, who was in gang area late at night, grabbed object in his waistband and pulled *1239 it back and forth); State v. Johnson, 1996 WL 466419, at *1-2 (Ohio Ct.App. Aug. 14, 1996) (officer had reasonable articulable suspicion to stop suspect, where suspect, who was standing on street corner in high-drug area, took item from his waistband and put item in back pocket); cf., e.g., W.H. v. State, 928 N.E.2d 288, 294-96 (Ind.Ct.App.2010) (officer had reasonable articulable suspicion to stop suspect, where suspect was lifting up his shirt and showing object inside waistband to another person; “It is quite apparent to an experienced police officer, and indeed it may almost be considered common knowledge, that a handgun is often carried in the waistband.”) (internal quotation marks omitted); Williams v. State, 717 So.2d 1109, 1109-10 (Fla.Dist.Ct.App.1998) (officer in high-drug area had probable cause where suspect, who was “well known as a street person” arid had previously' been arrested, reached below pants into buttocks area, removed a small object, exchanged object for another small object, looked around, and returned object beneath his pants).
The only case we have located that arguably points in the opposite direction is distinguishable, because although the suspect in that case placed- a paper bag inside his pants, there were no other indications of a drug transaction, whereas the present case involves an exchange of small objects out on a street. See State v. Maryland, 167 N.J. 471, 771 A.2d 1220, 1229-31 (2001) (police lacked reasonable articulable suspicion to stop suspect who got off train and placed brown paper bag into waistband of sweatpants, which may or may not have had pockets; court noted absence of testimony as to why officers viewed conduct as suspicious and stated that there was “nothing suggesting that a drug transaction had taken place”).
Similarly, in cases in which this court has found gestures involving objects insufficient to support a Terry stop, there were plausible, innocent explanations for those gestures. See, e.g., In re A.S., 827 A.2d 46, 46-48 (D.C.2003) (no basis for Terry stop where suspect in high-drug area walked away from police and made stuffing motion in waistband area; court emphasizes that motion “could be the person’s tucking in his shirt, scratching his side, pulling up his pants, arranging his underwear, pager, cell phone, or Walkman, etc.”) (internal quotation marks omitted); Duhart v. United States, 589 A.2d 895, 899 (D.C.1991) (display of “something” to another person without evidence of exchange did not provide reasonable articulable suspicion; . “there' are innumerable innocent explanations for such behavior”); In re T.T.C., 583 A.2d 986, 990 (D.C.1990) (one-way passing of small white object in high-drug area not sufficient basis for reasonable articulable suspicion; “object may have been illegal drugs or any number of other things”). As we have noted, we do not perceive such an innocent explanation in the present case.
C.
We further conclude that the citizen’s description of the suspect provided a sufficient basis to stop Mr. Morgan. The citizen described the suspect as a short black male with dreadlocks who was wearing a shirt described at various points as some combination of blue, gray, and purple, and who was riding a red bicycle in the 1500 block of P Street, NW. When the officers arrived at that location about thirty seconds after the citizen’s second call, they saw Mr. Morgan there. Mr. Morgan was riding a red bicycle and, according to the police, matched the description provided by the citizen. Those circumstances supported a reasonable conclusion that Mr. Morgan was the suspect. See, e.g., United States v. Turner, 699 A.2d 1125, 1126-30 (D.C.1997) (officers had adequate basis to *1240 stop defendant where suspect was described as black male wearing blue jacket and blue jeans and as being near 1408 Girard Street, and officers responded to location within one minute and found defendant at stated location matching description).
Mr. Morgan argues, however, that there were two discrepancies between his appearance and the description provided by the citizen: he was wearing a hat when stopped by the police and his shirt was black. Neither alleged discrepancy undermines articulable suspicion. Although Mr. Morgan’s wife did testify that Mr. Morgan was wearing a hat when she saw him seated in the police car after the stop, that testimony, even if credited, would not establish that Mr. Morgan had been wearing a hat during the events at issue. And the color of the shirt Mr. Morgan was wearing at the time of the arrest was variously described as “grayish blue or grayish purple” (Sergeant Boteler) and “blue” (Mr. Morgan’s wife). In comparison, the testimony indicated that the citizen described the suspect’s shirt color as “blue gray,” “purplish gray, or purple slash gray,” or “purple and grayish.” On appeal, Mr. Morgan argues, apparently in reliance upon a police report used for impeachment at trial, that he was actually wearing a black shirt. Given the many other distinctive points of similarity, these varying col- or descriptions do not undermine articula-ble suspicion. See, e.g., United States v. Atkins, 513 Fed.Appx. 577, 580 (6th Cir. 2013) (“[A] minor difference in reported color (silver v. ‘tamvish’) cannot undermine the validity of a stop supported by other physical similarities, as well as temporal and physical proximity to the reported crime.”); see generally Umanzor v. United States, 803 A.2d 983, 996 (D.C.2002) (“the color discrepancy is not dispos-itive in our assessment of the legality of the Terry stop,” because among other things officer could have reasonably inferred that individuals mistakenly believed dark blue vehicle was gray).[1]
The judgment of the Superior Court is therefore

Affirmed.

. Mr. Morgan also argues that the police questioned him in violation of the requirements of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Neither in the trial court nor in this court, however, has Mr. Morgan identified any specific incriminating statement that he believes ought to have been suppressed on Miranda grounds. Mr. Morgan did acknowledge that he possessed K-2, but that statement was not relied upon as part of the basis for conviction during the stipulated trial. Under the circumstances, we see no reason to address the Miranda issue. Cf. State v. Ayson, 129 Wash. App. 1046, 2005 WL 2488404, at *1-3 (Ct.App.2005) (unpub. per curiam) (any error in failing to suppress statements was harmless in light of other evidence at stipulated trial).